IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

|  |  |  |
|---|---|---|
| Advantage Veterans Services of Walterboro, LLC, | ) ) ) | C/A No. 2:20-cv-2214-MBS |
| Petitioner, | ) ) | |
| v. | ) ) | **ORDER AND OPINION** |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International, Local 7898, | ) ) ) ) ) | |
| Respondent. | ) ) | |

This matter is before the court pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, on Petitioner Advantage Veterans Services of Walterboro, LLC's ("Advantage Veterans Services" or "AVSW") petition to vacate a labor arbitration award and Respondent United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International, Local 7898's (the "Union") counterclaim for confirmation of the arbitration award. The parties filed dispositive motions, which are currently pending before the court. For the reasons explained below, the court denies AVSW's motion for summary judgment and grants the Union's cross motion for summary judgment.

## BACKGROUND

Advantage Veterans Services operates as a long-term care facility and is an employer within the meaning of § 2(2) of the Labor Management Relations Act of 1947, as amended ("LMRA"), 29 U.S.C. § 152(2). ECF No. 1 at ¶ 2. The Union is a labor organization as defined in § 2(5) of the LMRA, 29 U.S.C. § 152(5), representing employees in an industry affecting

commerce. *Id.* at ¶ 3. Advantage Veterans Services and the Union are parties to a Collective

Bargaining Agreement ("CBA"), which was in operation between April 30, 2018 and April 30,

2020. ECF No. 1-1 at 4.

The CBA

Under the CBA, employee disciplinary matters are governed by a set of rules known as

"ABC Rules," which Rules delineate three categories of offenses and the associated corrective

action. ECF No. 1-1 at 28. The ABC Rules specify that "'C' Type Offenses" "typically call[]

for immediate higher-level corrective action, up to and including termination of employment."

*Id.* at 30. Relevant here, Rule C8 prohibits conduct that violates AVSW's "policy against

discrimination, or harassment, or bullying," and Rule C12 prohibits "falsifying records including

time records, expense claims, patient medical records or engaging in other acts of dishonesty."

*Id.* at 31.

Article 13 of the CBA governs the parties' grievance procedure and any resulting

arbitration. ECF No. 1-1 at 15. Under section 4 of Article 13, the arbitrator's decision shall be final

and binding on the Union and AVSW so long as it is in accord with the following directives:

> The functions of the arbitrator shall be to determine controversies arising out of
> interpretations and applications of the provisions of this agreement. However, the
> arbitrator shall have no power or authority to add to, take from, amend, revise or
> modify any of the terms of this Agreement, any agreement made supplementary
> hereto or modify in any way AVSW's responsibilities, duties, prerogatives or rights
> under this agreement, nor shall the arbitrator substitute his discretion for the
> discretion of AVSW in those cases where the contract provides AVSW discretion . .
> . . In all discipline cases, the arbitrator shall determine whether AVSW had a
> reasonable basis for concluding that the employee engaged in the conduct for which
> he/she is being disciplined. No arbitrator is empowered to rule on any matter other
> than alleged violations of a specific provision or provisions of this Agreement or any
> current supplementary agreement executed by the parties which the parties have
> agreed is arbitrable. If the Arbitrator's Award complies with and is not contrary to
> this Agreement and the limitations imposed by this Section 4, the Award shall be
> final and binding on the parties. If a court of competent jurisdiction finds that the
> Arbitrator abused his or her discretion in any way or if the Award is contrary to this

2

Agreement in any way, the Award shall be deemed not to draw its essence from the Agreement and shall be vacated.

*Id.* at 16-17.

Section 1 of Article 14 provides that "AVSW shall determine the appropriate discipline to administer, including the level of discipline imposed." ECF No. 1-1 at 18. Section 2 of Article 14 specifies that AVSW "reserves the right to discipline, including disciplinary suspensions, discharge, dismiss, or demote an employee for just cause," and states that AVSW "will notify a union steward prior to suspending or discharging an employee except in cases requiring the immediate removal of an employee. *Id.*

<u>Underlying Dispute</u>

In February 2019, Advantage Veterans Services received reports that employee Sarah Black, a Union steward, had bullied another employee, Lisa Pangborn. *Id.* at ¶ 17. Specifically, Ms. Pangborn reported that she was approached by Ms. Black on two occasions and harassed about a statement she had provided to management during its investigation of Union member Shekevia Washington's misconduct, which statement contributed or led to Ms. Washington's termination. *Id.* at ¶ 18. Floor supervisor, Lakeyia Graham, and House Supervisor, Chelsea Riles, received statements from two other employees who reported observing Ms. Pangborn as distraught after an encounter with Ms. Black. Ms. Graham and Ms. Riles met with Ms. Pangborn, who reported that Ms. Black told her if she did not sign a statement contradicting her prior statement regarding Ms. Washington, she would lose her job. Ms. Black was placed on an investigatory suspension on February 24, 2019. *Id.* at ¶¶ 22-26, 29. On February 26, 2019, the Union filed a grievance alleging that "[t]he Company sent our Unit Griever home without notifying the Union of the reason," and requested as a remedy that "[t]he Company [ ] make Sarah Black whole for all lost earning (sic) and to provide the union with any an (sic) all

3

requested information." *Id.* at ¶¶ 30, 33, 34.  Advantage Veterans Services initiated an

investigation into the grievance and concluded that Ms. Black had violated Rules C8 and C12.

Advantage Veterans Services thereafter terminated Ms. Black's employment on March 6, 2019.

*Id.* at ¶¶ 38-40.  On March 11, 2019, the Union filed a grievance alleging that Ms. Black was

unjustly terminated.  *Id.* at ¶ 41.

Arbitration Process

Advantage Veterans Services and the Union selected Arbitrator Hoyt N. Wheeler to

hear and decide a grievance filed on behalf of Ms. Washington and the two grievances filed on

behalf of Ms. Black.  ECF No. 1 at ¶ 42.  The complaint states that Ms. Washington and Ms.

Black's grievances were linked because "Ms. Pangborn had provided a statement which was to

be used in the Washington grievance which is the reason Ms. Black had repeatedly approached

Ms. Pangborn in an effort to get her to recant or change her statement and all three of the

grievances involved many of the same witnesses."  *Id.* at ¶ 43.  Therefore, the parties agreed that

the same arbitrator should hear both grievances.  *Id.*  Arbitrator Wheeler held a hearing on Ms.

Washington's grievance on May 21, 2019 and held a hearing on Ms. Black's grievance on May

30, 2019.  *Id.* at ¶¶ 44, 45.  Arbitrator Wheeler issued an arbitration award on July 15, 2019,

denying Ms. Washington's grievance, ECF No. 1-2, but passed away before he could render a

decision on Ms. Black's grievance.  The parties selected Arbitrator Jeanne M. Vonhof as

Arbitrator Wheeler's replacement.  Following submission of Advantage Veterans Services's

Supplemental Arbitration Brief, Arbitrator Vonhof issued an arbitration award that sustained

both grievances and ordered Ms. Black reinstated and made whole for any losses resulting from

her termination (the "Award").  ECF No. 1-4.

Procedural History

Advantage Veterans Services received notice of the Award on March 10, 2020, ECF No. 1 at ¶ 54, and filed the Petition to Vacate Arbitration Award in this court on June 8, 2020. In support of its only cause of action to vacate the Award, Advantage Veterans Services alleges that the Award "does not draw its essence from the CBA" and that Arbitrator Vonhof "exceeded her jurisdiction in deciding an issue that was not submitted for her decision." *Id.* at ¶ 74. Specifically, Advantage Veterans Services alleges that Arbitrator Vonhof violated Article 13 of the CBA that arbitrators not add to or modify the rights and prerogatives under the CBA and violated Article 14 of the CBA regarding the notice requirement and prohibition on double jeopardy. *Id.* at ¶¶ 75-82.

On September 18, 2020, the Union filed an answer and asserted a counterclaim for breach of contract on the basis that this lawsuit violates the parties' "express agreement in Article 13 of the CBA that the decision of an arbitrator resolving a grievance is 'final and binding' on the parties to the CBA." ECF No. 6 at 13, ¶ 13. The Union asks the court to enter an order confirming the Award. *Id.* at 14. Advantage Veterans Services filed an answer to the counterclaim on October 9, 2020. ECF No. 7.

The Parties moved to stay these proceedings for approximately five months pending their efforts at resolving the dispute. Mediation proved unsuccessful and, on June 7, 2021, Advantage Veterans Services filed the Motion to Vacate Arbitration Award ("Motion to Vacate"). ECF No. 21. The Union filed a combined cross Motion for Summary Judgment and memorandum in opposition to the Motion to Vacate. ECF No. 24. Advantage Veterans Services thereafter filed a response to the cross Motion for Summary Judgment, ECF No. 28, and a reply in support of its Motion to Vacate, ECF No. 27. The Union did not file a reply brief.

**LEGAL STANDARD**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248–49 (1986). When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits "to determine whether either of the parties deserves judgment as a matter of law." *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger,* 122 F.3d 58, 62 n.4 (1st Cir. 1997)). "When considering each individual motion, the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Id.* (quoting *Wightman v. Springfield Terminal Ry. Co.*, 100 F.3d 228, 230 (1st Cir. 1996) (internal quotation marks omitted).

**DISCUSSION**

The requirement to submit to arbitration is solely a matter of contract and, for matters within the scope of an arbitration clause, the arbitrator's award is final and binding. *Champion Int'l Corp. v. United Paperworkers Int'l Union*, 168 F.3d 725, 728 (4th Cir. 1999). By entering a collective bargaining agreement, "parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge," and thus "it is the arbitrator's view of the facts and of the meaning of the contract" that the parties have agreed to accept. *United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37-38 (1987). Therefore, courts "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts"; a court may not reject an arbitrator's treatment of facts or interpretation of the contract

"simply because it disagrees with them." *Id.* at 38. The same is true "where it is contemplated that the arbitrator will determine remedies for contract violations that he finds." *Id.*

"The reasons for insulating arbitral decisions from judicial review are grounded in the federal statutes regulating labor-management relations," which statutes "reflect a decided preference for private settlement of labor disputes without the intervention of government." *Misco, Inc.,* 484 U.S. at 37. To wit, the LMRA states that "[f]inal adjustment by a method agreed upon by the parties is hereby declared to be the desirable method for settlement of grievance disputes arising over the application or interpretation of an existing collective-bargaining agreement." 29 U.S.C. § 173(d). Such policy "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *United Steelworkers of America v. America Mfg. Co.,* 363 U.S. 564, 566 (1960). Thus, the court must defer to the arbitrator "as long as the arbitrator is even arguably construing or applying the contract." *Champion Int'l Corp.,* 168 F.3d at 728 (citing *Misco, Inc.,* 484 U.S. at 38). *See Mountaineer Gas Co. v. Oil, Chemical & Atomic Workers Int'l Union,* 76 F.3d 606, 608 (4th Cir. 1996) (describing the court's role as determining "only whether the arbitrator did his job—not whether he did it well, correctly, or reasonably, but simply whether he did it") (citing *Remmey v. PaineWebber, Inc.,* 32 F.3d 143, 146 (4th Cir. 1994)).

However, the court must vacate an arbitration award if the award "violates clearly established public policy, fails to draw its essence from the collective bargaining agreement, or reflects merely the arbitrator's personal notions of right and wrong." *Champion Int'l Corp.,* 168 F.3d at 728-29 (citing *Mountaineer Gas,* 76 F.3d at 608). In reviewing an arbitration award, the court "must satisfy itself that the award is grounded in the collective bargaining agreement rather

7

than in the arbitrator's own brand of industrial justice." *Id.* at 729 (internal quotations and citation omitted).

## I.    Arbitrator Vonhof's Decision

### A.  Grievance Regarding Ms. Black's Termination

The parties granted Arbitrator Vonhof the authority to frame the issues presented by the arbitration and she identified the salient questions as follows: "Whether the Grievant was terminated pursuant to the just cause provision of the parties' Agreement and, if not, what shall be the remedy"; and "was there a breach of any provision of the Agreement related to the advance notice requirements of Article 14?" ECF No. 1-4 at 3.

Arbitrator Vonhof applied a heightened standard of proof to the evidence she reviewed, which she explained as follows:

> Arbitrators often apply a strict standard of proof to evidence of charges where the consequences of finding a violation will most likely result in termination without progressive discipline. This is particularly true in regard to charges involving dishonesty, because sustaining a discharge based upon dishonesty may affect an employee's future career. Therefore, there must be strong, convincing evidence to terminate an employee's job for these charges, especially when the employee has significant job tenure and a clean disciplinary record.

ECF No. 1-4 at 26. Arbitrator Vonhof began the discussion of her findings and decision by noting that Advantage Veterans Services terminated Ms. Washington "for walking off the job." She also noted that Arbitrator Wheeler, "ruled that there was just cause for [Ms. Washington's] termination for job abandonment," and in doing so "did not mention Ms. Pangborn's statement about Ms. Washington bullying her as a factor in upholding the discharge." *Id.* Arbitrator Vonhof summarized her understanding of the undisputed facts as follows:

- "at the time of the events relevant to this grievance, the Grievant [Ms. Black] and Ms. Pangborn did discuss her statement made in the investigation of the Washington termination case";

- "when the Grievant spoke with Ms. Pangborn -- in any of the discussions at issue in this grievance -- she did so in her official capacity as a Union Griever, investigating the facts underlying the Washington termination";

- "Ms. Pangborn wrote out a second statement saying that she had been coached by Ms. Pendarvis in writing her original statement about Ms. Washington";

- "Ms. Pangborn acknowledges that she never asked the Grievant to file a grievance for her over her work assignments, which would have been a logical request if she believed that she was being bullied by other employees";

- "Ms. Pangborn testified that the Grievant had successfully represented her as a Griever in attendance matters."

ECF No. 1-4 at 27-28. Arbitrator Vonhof found in relevant part that these undisputed facts lent credibility "to the Grievant's testimony that she was surprised when she read Ms. Pangborn's statement and asked Ms. Pangborn about whether Management had coached her to use the word 'bullying,' because Ms. Pangborn had not reported to the Grievant, her Union Griever and friend, that she was being 'bullied.'" *Id.* at 28. Arbitrator Vonhof then summarized her understanding of the conflicting evidence, and her assessment of credibility, as follows:

> Ms. Pangborn states now that she was not coached by a Management representative in making her original statement, even though this directly contradicts her second written statement. AVSW argues that Ms. Pendarvis denied in the investigation of this case coaching Ms. Pangborn during the Washington investigation. However, Ms. Pendarvis did not testify at arbitration. The Union did not have the opportunity to cross-examine Ms. Pendarvis, and therefore I cannot consider her hearsay statements made during the investigation here as reliably as if she had testified. This is true about other nurse and CNA

witness statements as well. Thus, AVSW's evidence regarding whether Ms. Pangborn was coached by Management in making her original statement; why she wrote the second statement; and her conversation with the Grievant on February 24 depend almost entirely upon Ms. Pangborn's testimony. Other than Ms. Pangborn and the Grievant, there was no eyewitness testimony at arbitration about any of these conversations.

Ms. Pangborn testified that she was intimidated (but not bullied) by the Grievant into writing the second statement. I have considered Ms. Riles' testimony that Ms. Pangborn told her, before February 24, that she wished to move to Currey, mostly because she was being bullied by her co-workers at Elliott, but also because the Grievant had talked to her more than once about her statement about Ms. Washington and was pressuring her to retract it. Ms. Riles' testimony is based upon what Ms. Pangborn told her.

However, Ms. Pangborn did not provide details in her testimony about when the Grievant initially spoke to her about the second statement; how many times the Grievant spoke to her about it; what was said in these alleged conversations or where they occurred; where she was when she wrote out the statement; when she wrote it or when she gave it to the Grievant. In addition, Ms. Riles' testimony does not disclose that Ms. Pangborn provided any of these details to her. In contrast, the Grievant provided concrete details in her testimony about her discussion with Ms. Pangborn regarding the Grievant's questions about Ms. Pangborn's original statement; where the conversation occurred; and when and how she received Ms. Pangborn's second statement. These details are important in determining the relative credibility of the only two witnesses to these alleged conversations. The absence of any clear or consistent testimony from Ms. Pangborn about any of these facts undermines her claim that the Grievant coerced her into writing the second statement, and therefore, AVSW's charge of coercion in the termination notice.

*Id.* at 28-29.

With respect to the charge that Ms. Black attempted to coerce Ms. Pangborn into

falsifying a statement, Arbitrator Vonhof observed:

AVSW has disciplined the Grievant for trying to get Ms. Pangborn to change her first statement, which the Employer considers to be truthful, by encouraging the Grievant to sign a second untruthful statement. The Grievant testified that at the time of her conversation with Ms. Pangborn, she believed that the second statement which had been written by Ms. Pangborn was true. Ms. Pangborn had filled out the statement, in her own writing, on the form usually used for written statements in investigations. The Grievant was asking Ms. Pangborn to complete the form by signing and dating it. This would be a normal course of action for the Grievant in her duties as a Union Griever.

In evaluating the evidence about Ms. Pangborn's demeanor and state of mind after her conversation with the Grievant, I have considered that she testified that during her conversation with the Grievant she told the Grievant that she was concerned that signing the second statement would indicate that her first statement was not truthful, and that this could cause her to get in trouble for making a dishonest statement. She had good reason to be concerned and upset, because she had written two contradictory statements within the past week regarding an Employer investigation. One of those statements was not completely truthful. It would be part of the Grievant's duties as a Union Griever to discuss with an employee the potential consequences for submitting a statement that was not truthful, including the possibility of further investigation by Management. Ms. Pangborn said she raised this concern and the Grievant testified she did discuss potential consequences with Ms. Pangborn, although they do not agree on exactly what was said.

In assessing Ms. Pangborn's statements that she felt threatened by the Grievant, I note that Ms. Pangborn did not explain how or why she thought that the Grievant or the Union could cause her to lose her job. The Union does not have the authority to remove the Grievant from her job. The Employer, however, has the authority to discipline and discharge employees for making untruthful statements, and has done so in the past.

ECF No. 1-4 at 29-30.   These observations led Arbitrator Vonhof to surmise:

Thus, Ms. Pangborn's testimony about her concern about potential consequences resulting from her contradictory statements casts doubt upon her testimony that the only reason she refused to sign the second statement was because it was untrue. In order to resolve the situation she created by her contradictory statements, it is possible that she decided that staying with her original statement and dropping the second statement was the safest course of action, no matter what the truth was about why or how she had signed the first statement.

*Id.* at 30-31.   Arbitrator Vonhof then concluded:

[T]here is significant evidence in the record that Ms. Pangborn feels more pressured or bullied than other employees by regular interactions with her co-workers. This evidence undermines the credibility of her testimony that the Grievant's conversations with her amounted to threatening and coercing her into submitting an untrue statement about the Washington investigation. Furthermore, her testimony now that she wrote out a false statement in relation to an Employer investigation, for whatever reason, significantly undermines her overall credibility.

*Id.* at 31.   Arbitrator Vonhof found by contrast:

> The Grievant is a seven-year employee with no prior discipline on her record. No witness testified that the Grievant has any history of dishonesty. Management described her as an "exceptional employee," and presented testimony that they wished they had more CNAs like her. One of Ms. Pangborn's chief complaints against the other CNAs is that she was forced to accept the Grievant's regular assignment, when the Grievant was not present. Ms. Pangborn objected to this assignment because she said that it was one of the more difficult ones, requiring more physical effort, which Ms. Pangborn preferred to avoid.

*Id.* at 31-32.

In sum, Arbitrator Vonhof determined that she must decide the case by evaluating the credibility "of the only two witnesses to the critical events leading to the Grievant's termination who appeared at arbitration, the Grievant and Ms. Pangborn." ECF No. 1-4 at 32. In concluding that the Union's grievance be sustained and in ruling that Ms. Black be reinstated and made whole, she explained:

> In evaluating the Grievant's credibility, I recognize that she has a significant interest in saving her job. However, Ms. Pangborn, having prepared contradictory statements regarding an Employer investigation, also has an interest in the version of the events which she has presented here. Her admission that she wrote out conflicting statements regarding the Washington investigation, and other gaps in her testimony regarding important details, seriously undermine her credibility, upon which the Employer rests its case. The Employer bears the burden of proof in this case, and it is a significant burden, given the seriousness of the charges against the Grievant, and her past good record of service to the Employer. There is not sufficient evidence on this record to conclude that the Grievant violated the Employer's anti-harassment policy or its rule against dishonesty, or that she bullied Ms. Pangborn and attempted to coerce her to make a false statement.

*Id.* at 32.

### B. Grievance Regarding Notice

Arbitrator Vonhof then undertook review of the Union's grievance that Advantage Veterans Services violated section 2 of Article 14, which required AVWS to "notify a union steward prior to suspending or discharging an employee except in cases requiring the immediate

removal of the employee."  Arbitrator Vonhof summarized Advantage Veterans Services's

argument as follows:

> AVSW argues that the Grievant was sent out of the facility on February 24 on a
> suspension pending investigation, not a disciplinary suspension, and because she
> never returned to work, no notice was required in this case. The Employer argues
> further that under the circumstances, Management was justified in taking
> immediate action to remove the Grievant. In addition, AVSW contends that even
> if this were regarded as a disciplinary suspension, the Grievant is the Union
> Steward and so the Union had notice of it.

ECF No. 1-4 at 33.  Addressing AVWS's defenses seriatim, Arbitraror Vonhof found that the

notice language in section 2 of Article 14 is mandatory and requires advance warning to the

Union, regardless of whether the suspension at issue is disciplinary in nature or imposed pending

an investigation.  *Id.*  Thus, "[g]iven the mandatory nature of the language, and without more

evidence, (from bargaining history for example) showing an intent by the parties to limit the

language," Arbitrator Vonhof found she could not "add an exception or limitation to the plain

language of the provision for suspensions pending investigation."  *Id.*

With respect to AVWS's position that it was justified in taking immediate action to

remove Ms. Black, Arbitrator Vonhof found that AVWS had produced no evidence to support

the contention that Ms. Black had acted in a way such that her immediate removal was *required*,

which is the one instance in which advance notice is not required under section 2 of Article 14.

ECF No. 1-4 at 33-34.  Noting that the CBA does not describe situations that require the

immediate removal of an employee, Arbitrator Vonhof speculated that management would have

been justified in removing Ms. Black immediately and without notice to the Union had they

discovered her acting in a loud and abusive manner, observed her involving Ms. Pangborn in a

physical altercation or verbally threatening her with bodily harm, or found Ms. Black defying a

supervisor's order.  *Id.* at 34.  However, Arbitrator Vonhof found that "there is no evidence that

the Grievant ever engaged in any conduct of this kind"; rather, "Ms. Riles reported that the Grievant was calm and cooperative when she was suspended, and that she was located in a different building than Ms. Pangborn." *Id.* at 34. Arbitrator Vonhof thus concluded that "[u]nder these circumstances the Employer has not established that the situation required that the Grievant be immediately removed, without Management even attempting to call the Union and notify them of the Grievant's suspension." *Id.*

As to AVSW's final contention that it satisfied the notice requirement in any event, Arbitrator Vonhof disagreed. She explained that "[t]he contract language requires notice to the Union before the suspension or discharge is imposed," and "[t]he language contemplates that someone other than the disciplined employee is to be notified before the employee receives serious discipline," and she determined that "[t]here is no exception in the language for situations where a Union officer is the disciplined employee." *Id.* at 34. Therefore, Arbitrator Vonhof concluded that "the Union official has the same right to have a Union representative be informed about serious discipline before it is imposed, just like any other employee." *Id.* She noted in support of her conclusion "that one of the reasons for such provisions is to provide the Union with notice from Management – rather than from the employee – before Management takes serious action against a bargaining unit member, so that the Union is not blind-sided, first hearing about the action after it has been imposed." *Id.* Because AVSW failed to provide such notice, Arbitrator Vonhof ruled that it had violated the contract.

## II.     Cross Motions for Summary Judgment

### A.  Arguments Before the Court

In support of its petition asking the court to vacate the Award, Advantage Veterans Services argues that the Award is directly contrary to the CBA and therefore fails to draw its

essence from the parties' agreement.  ECF No. 21-1 at 21.  Specifically, Advantage Veterans

Services contends that the Award "fails to discuss the appropriate standard for review of the

Company's decision and application of the correct standard of review may require a different

result," and argues in the alternative that the Award "purports to apply a different standard of

review from the standard expressly provided in the CBA."  *Id.* at 25.  Advantage Veterans

Services further argues that the court must vacate the entire Award—including the portion

related to the suspension notification grievance—if it finds it appropriate to vacate the "portion

of the award pertaining to the Black discharge grievance."  *Id.* at 29.  Alternatively, should the

court review the suspension notification grievance separately, the court should vacate that

portion of the Award because the remedy for the suspension grievance constitutes an unlawful

award of punitive damages.  *Id.* at 30.

　　　　The Union filed a combined response to AVSW's motion for summary judgment and

memorandum in support of its cross motion for summary judgment asking that the court confirm

the Award.  In response to AVSW's request for vacatur, the Union asserts essentially that

Arbitrator Vonhof did her job in interpreting and applying the CBA; the Union contends that she

is entitled to deference with respect to how she framed the issues before her and that her factual

and evidentiary findings are not subject to review.  ECF No. 24 at 12-25.  In support of its cross

motion, the Union asserts that AVSW fails to demonstrate a basis on which the court may vacate

the Award.  The Union asks for an award of attorney fees on the basis that AVSW's petition and

motion are frivolous in nature.  *Id.* at 25-32.

　　　　In reply in support of its motion, AVSW contends that Arbitrator Vonhof failed to

conduct the scope of review that the parties agreed to in the CBA, which it defines as "whether

AVSW had a reasonable basis for concluding that the employee engaged in the conduct for

which he/she is being disciplined." ECF No. 27 at 1. In response in opposition to the Union's cross motion, AVSW argues that the court cannot confirm the Award because it is the product of an arbitration during which the Arbitrator exceeded her authority as delineated in the CBA. ECF No. 28 at 1.

### B. Findings

As described above, a federal court's review of an arbitrator's award under § 301 of the LMRA, 29 U.S.C. § 185, is very limited. *See, e.g., Island Creek Coal Co. v. Dist. 28, United Mine Workers of Am.,* 29 F.3d 126, 129 (4th Cir. 1994). The court must uphold an arbitration award so long as it "draws its essence from the agreement." *Upshur Coals Corp. v. United Mine Workers of America, Dist. 31*, 933 F.2d 225, 229 (4th Cir. 1991) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 597 (1960)). In assessing the award's relationship to the parties' agreement, and whether the arbitrator has exceeded her contractual authority, the court asks simply whether the arbitrator "did [her] job," not whether the arbitrator "did it well, correctly, or reasonably, but simply whether [she] did it." *Mountaineer Gas Co.*, 76 F.3d at 608 (instructing courts to examine: "(1) the arbitrator's role as defined by the CBA; (2) whether the award ignored the plain language of the CBA; and (3) whether the arbitrator's discretion in formulating the award comported with the essence of the CBA's proscribed limits."). *See U.S. Postal Serv. v. Am. Postal Workers Union, AFL-CIO*, 204 F.3d 523, 527 (4th Cir. 2000).

### 1. Construction of the Contract

Section 4 of Article 13 states that in all discipline cases, the arbitrator *shall* determine whether AVSW had a *reasonable basis* for concluding that the employee engaged in the conduct for which she is being disciplined; and section 2 of Article 14 states that AVSW may discipline

employees for *just cause*.  Arbitrator Vonhof expressly referenced at the outset of her decision

the limiting language in section 4 of Article 13.  ECF No. 1-4 at 4.  She then observed, at the

beginning of the section titled "Findings and Decision," that:

> The Employer argues that the charges against the Grievant are so serious that a finding that she has violated either rule means that the termination must be sustained. The two rules cited in the Grievant's termination notice are categorized under its "C" group, AVSW's most serious violations. The rules state that these violations typically call for "immediate higher-level corrective action, up to and including termination of employment." Under these rules, therefore, it is possible that significant violations of AVSW's policies against harassment, bullying of co-workers and dishonesty may lead to termination, without the application of progressive discipline.

*Id.* at 25.

Based on the above quoted paragraph, the court infers that Arbitrator Vonhof premised

her analysis on whether Ms. Black had in fact violated Rule C8 and/or Rule C12.  The Union

argues persuasively that in thus framing her analysis, Arbitrator Vonhof applied both the just

cause and reasonable basis standards: she "hewed to the requirement that discipline be for just

cause, and to the requirements of the Article 14 Limitations clause, which she explicitly cites,"

and, accordingly, "[e]very factual determination, credibility finding, and assessment of the

evidence in the Award is aimed at determining whether a reasonable basis exists for concluding

that the alleged conduct occurred, and whether Ms. Black's termination was for just cause."

ECF No. 24 at 25-26.  Nothing in the language of the CBA suggests, and AVSW does not

contend, that it would be impossible for an arbitrator to apply both standards in rendering an

award that comports with the plain language of the CBA and the essence of the agreement.  *See*

*Misco*, 484 U.S. at 34, n.5 (listing reasonableness of employer's position as one of seven criteria

arbitrator used in finding no just cause for employee's termination).  *Cf. U.S. Postal Serv.*, 204

F.3d at 528 (disagreeing that arbitrator simply construed the language in two articles of parties'

agreement where arbitrator's decision contravened unambiguous language in one of those

articles).   And, as the Union argues and AVWS appears to concede, it cannot be said that

application of the reasonable basis standard in this arbitration *required* a result other than the

result Arbitrator Vonhof reached.  ECF No. 24 at 30.  *See* ECF No. 21-1 at 22 (AVWS asserting

in its affirmative motion that "application of the correct standard of review *may* require a

different result") (emphasis added).[1]  In short, it is not for the court to find that Arbitrator

Vonhof's analysis constitutes the best or most accurate reading of the CBA; it is enough for

purposes of this action to find that her analysis reflects a plausible reading of the CBA.  *See*

*Upshur Coals Corp.*, 933 F.2d at 230 ("We do not and need not decide whether any of these

analyses constitute the best or most accurate reading of the contract. We hold only that they are

plausible readings of the agreement . . . . Consequently, . . . we cannot say that the arbitration

award failed to draw its essence from the agreement"). [2]

To the extent AVWS would argue that the Award is subject to vacatur because it is

unclear whether Arbitrator Vonhof relied on both standards in rendering her decision, settled

precedent dictates that "[a] mere ambiguity in the opinion accompanying an award, which

---

[1] Advantage Veterans Services argues that the Award should be vacated under *Clinchfield Coal Co. v. Dist. 28, United Mine Workers of Am. & Local Union No. 1452*, 720 F.2d 1365, 1369 (4th Cir. 1983), for its failure to discuss critical contract language that "might reasonably require an opposite result." *See* ECF No. 21-1 at 22.  Use of the reasonable basis standard as advanced by AVWS may have resulted in a different outcome but it cannot be said that it would require a different outcome or that the Award is the result of an implausible reading of the CBA. *See MCI Constructors, LLC v. City of Greensboro*, 610 F.3d 849, 861-62 (4th Cir. 2010) (distinguishing *Clinchfield Coal* on the basis that the arbitrator's decision therein "seemed impossible to square with certain provisions of the contract") (citing *Upshur Coals Corp.*, 933 F.2d at 230).

[2] Advantage Veterans Services also argues that *Champion Int'l Corp.* requires finding that Arbitrator Vonhof impermissibly dispensed her own brand of industrial justice. *See* ECF No. 21-1 at 22.  However, the court vacated the arbitration award in *Champion Int'l Corp.* because in misinterpreting the grievance the arbitrator relied on a secondary agreement. 168 F.3d at 729-30. No such circumstance exists here.

permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award." *PPG Industries Inc. v. Int'l Chemical Workers Union Council of the United Food and Commercial Workers*, 587 F.3d 648, 652 (4th Cir. 2009) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.,* 363 U.S. 593, 598 (1960)).  The court notes that Arbitrator Wheeler commented on the potential ambiguity created by the presence of the two standards.  ECF No. 1-2 at 20.  Arbitrator Vonhof did not so comment, nor did she otherwise expressly find ambiguity in the CBA.  However, to the extent her decision was premised on a finding of ambiguity, section 4 of Article 13 states that "[t]he functions of the arbitrator shall be to determine controversies arising out of interpretations and applications of the provisions of this agreement," and therefore Arbitrator Vonhof would have acted within her contractual authority to determine the ambiguity *vel non* of the terms of the CBA.  *See PPG Industries Inc.*, 587 F.3d at 654 (citing *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 453 (2003) (noting that when a contract contains such "sweeping language concerning the scope of the questions committed to arbitration, . . . matter[s] of contract interpretation should be for the arbitrator, not the courts, to decide")).

The court will not vacate an award on the ground that an arbitrator misread the contract, *Misco*, 484 U.S. at 38, or misconstrued the contract, *PPG Industries Inc.*, 587 F.3d at 649.  Nor may the court vacate an award even though the award is the product of a "misinterpretation of law, faulty legal reasoning or erroneous legal conclusion."  *Upshur Coals Corp.*, 933 F.2d at 229 (citation omitted).  Rather, to overturn the Award, the court must find that Arbitrator Vonhof rendered a legal interpretation in manifest disregard of the law or based the Award on her "own personal notions of right and wrong, for only then does the award fail to draw its essence from the collective bargaining agreement."  *Id.* (citation and internal quotation marks omitted).

Because a plausible reading of the CBA allows for an arbitrator to apply a just cause standard of review alongside an inquiry into whether the company acted with a reasonable basis, the court finds that Arbitrator Vonhof settled the parties' dispute in accordance with the language of the CBA and that the resulting Award comports with the essence of the parties' agreement.

### 2. Treatment of the Evidence

AVSW argues that Arbitrator Vonhof "ignore[ed] the 'reasonable basis' evidentiary standard set forth in the CBA for all disciplinary measures [and] replac[ed] it with a different, heightened evidentiary standard prohibited by the CBA." ECF No. 21-1 at 2. AVWS contends that a "reasonable basis" review required that Arbitrator Vonhof "review[] the Company's decision from the Company's perspective at the time the decision was made"; and that by applying a "strict standard of proof to evidence," Arbitrator Vonhof rejected as hearsay "numerous witness statements relied on by the Company in reaching its termination decision." ECF No. 21-1 at 3. In so doing, AVSW asserts, Arbitrator Vonhof "substituted her own judgment for the reasonable basis judgment of the Company." *Id.*

In her decision, Arbitrator Vonhof observed that "[a]rbitrators often apply a strict standard of proof to evidence of charges where the consequences of finding a violation will most likely result in termination without progressive discipline," and noted that "[t]his is particularly true in regard to charges involving dishonesty, because sustaining a discharge based upon dishonesty may affect an employee's future career." ECF No. 1-4 at 26. She therefore construed "just cause" for termination as requiring "strong, convincing evidence," and noted the heightened burden was especially appropriate "when the employee has significant job tenure and a clean disciplinary record." *Id.* Although AVSW articulates its understanding of what constitutes a reasonable basis review, it does not cite to any such defining language in the CBA and no one

suggests that the CBA otherwise constrains an arbitrator's treatment of evidence, particularly how she assesses credibility. *See* ECF No. 21-1 at 28 & n.4 (asserting that the "'reasonable basis' standard is borrowed from federal employment discrimination law"). The court finds that the applicable standard of proof, as a concept distinct from the applicable standard of review, was a procedural question well within Arbitrator Vonhof's contractual authority to decide. *See Misco, Inc.*, 484 U.S. at 39-40 (affirming that "when the subject matter of a dispute is arbitrable, 'procedural' questions which grow out of the dispute and bear on its final disposition are to be left to the arbitrator") (citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557 (1964)). [3]

However, even if the court were to assume that Arbitrator Vonhof erred in her treatment of the written witness statements, her error "was not in bad faith or so gross as to amount to affirmative misconduct." *Misco, Inc.*, 484 U.S. at 40 (noting by analogy to the Arbitration Act as to when a federal court may set aside a labor award based on an arbitrator's affirmative misconduct with respect to disputed evidence). Nor does AVSW allege that Arbitrator Vonhof acted with dishonesty in her assessment of the evidence. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (relying on *Misco, Inc.* to state that "[w]hen an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award"). Rather, AVSW takes issue with how Arbitrator Vonhof weighed the credibility of its witness statements. This is not a basis for vacating the Award.

---

[3] The court notes that the two concepts are distinct from each other, as one pertains to the level of deference a reviewing body owes a factfinder's decision and the other pertains to a quantum of proof to be measured by the factfinder. *See, e.g., Dantran, Inc. v. United States Dep't of Labor,* 171 F.3d 58, 69-70 (1st Cir. 1999).

### 3. The Remedy

In sustaining the grievance regarding Ms. Black's discharge, Arbitrator Vonhof ruled that Ms. Black be "reinstated and made whole." ECF No. 1-4 at 32. In sustaining the grievance regarding notice, Arbitrator Vonhof noted that the Union had not requested a separate remedy for this grievance and had only reiterated its prayer that Ms. Black be reinstated and made whole. AVSW contends that the Award as it pertains to the notice grievance should be vacated because reinstatement and full back pay pertaining to Ms. Black's 10-day investigatory suspension constitutes an unlawful award of punitive damages. ECF No. 21-1 at 4, 30. However, this argument appears to hinge on the court's finding that Arbitrator Vonhof acted outside of her contractual authority with respect to the discharge grievance—such that an award of backpay would constitute punitive damages were the court to vacate the portion of the Award that orders reinstatement. *See id. See also* ECF No. 27 at 15 (asserting that "the sole issue in dispute for purposes of vacatur is whether the Black discharge grievance should be vacated"). The Award does not order AVWS to pay damages to Ms. Black apart from what is required to make her whole as a remedy for sustaining the discharge grievance. Accordingly, upon finding that the Vonhof Award should be confirmed, the court concludes that AVSW's argument regarding punitive damages is moot.

## C. Attorney Fees

As a final matter, the court turns to the Union's request for attorney fees. The Union argues that fees are appropriate because AVSW's challenges to the Award constitute a presumptively unjustifiable attack on the merits of the Award. ECF No. 24 at 32. Advantage Veterans Services responds that neither the CBA nor § 301 of the LMRA provides for an award of attorneys' fees to a prevailing party and asserts that absent explicit contractual or statutory

authorization, the court should adhere to the American Rule requiring each party to bear its own attorneys' fees. ECF No. 28 at 3. AVSW also asserts that it "has presented a valid basis for vacatur," and thus should not be ordered to pay the Union's fees. *Id.*

The court has the equitable power to award attorney fees even in the absence of express language in the collective bargaining agreement and the LMRA providing for such. *United Food & Commercial Workers, Local 400 v. Marval Poultry Co., Inc.*, 876 F.2d 346, 350 (4th Cir. 1989). The award of fees here depends on whether AVSW pursued this litigation "without justification." *Id.* "Where a challenge goes to the fundamental issue[] of . . . whether an arbitration award 'draws its essence' from the contract, the standard for assessing its justification is indeed the relatively lenient one of whether it has 'any arguable basis in law.'" *Id.* at 351. Because such a challenge implicates the "fundamental question[] of the arbitrator's very power to act, [it] must be considered sufficiently 'justified' for this purpose unless there is literally no reasonably arguable legal support for [it]." *Id.* However, a challenge that implicates the merits of an award carries with it a more stringent standard of justification because such a challenge, "if undeterred, inevitably thwart[s] the national labor policy favoring arbitration," and "must be considered presumptively unjustified." *Id.*

The court finds that AVSW's challenge, at least as it pertains to Arbitrator Vonhof's construction of the contract and application of a just cause standard of review, goes to the fundamental issue of whether the Arbitrator acted within her contractual authority. As such, the challenge is subject to a more lenient standard, which asks simply whether the challenge has any arguable basis in law. The court cannot say that AVSW's position lacks any reasonably arguable legal support. Accordingly, the court denies the Union's request for an award of attorney fees.

**CONCLUSION**

For the reasons discussed herein, the court denies Advantage Veterans Services's motion for summary judgment, ECF No. 21, and grants the Union's cross motion for summary judgment, ECF No. 24.  Each party shall pay its own attorney fees and costs.

**IT IS SO ORDERED**.


/s/Margaret B. Seymour
Margaret B. Seymour
Senior United States District Judge

February 10, 2022
Charleston, South Carolina